## No. 9174.

THE PEOPLE EX REL. *v.* DISTRICT COURT OF THE SECOND
JUDICIAL DISTRICT ET AL.

1. MANDAMUS—*When Allowed.* When a subordinate court is directed by this court to enter a particular decree or order, obedience to the mandate will be enforced by mandamus.

The necessity and importance of obedience by the inferior court enlarged upon and enforced.

2. IRRIGATION—*Right of Consumer of Water* under contract with the owner of an irrigating ditch. The opinion in *Denver v. Brown*, 56 Colo. 216, construed and explained.

Proceedings in the District Court held a departure from the directions of that opinion, and void.

*Petition for Writ of Mandamus.*

Mr. JAMES A. MARSH and Mr. THOMAS H. GIBSON, for petitioner.

Messrs. GOUDY, TWITCHELL & BURKHARDT, and Mr. H. R. KAUS, for respondents.

*Statement of the Case.*

This is an application to compel the District Court of the City and County of Denver, to enter a decree in accordance with our judgment and opinion in the case of *City and County of Denver v. Brown et al.*, 56 Colo. 216.

In the general statutory adjudication settling the relative priority of irrigating ditches in water district No. 8, on the South Platte river, what is now known as the City ditch was awarded priority No. 1, by original construction, date November 28, 1860, priority No. 75, by first enlargement, date November 1, 1873, and priority No. 131, by second enlargement date March 7, 1881. The volume of these appropriations, while determined by the decree, is immaterial for the purposes of this case. July 21, 1902, an action was brought in the District Court to have adjudicated the respective rights of consumers from this ditch,

and June 15, 1908, the court entered what is termed the original decree in that behalf. The City and County of Denver as the proprietor and owner of the ditch, and in possession of its decreed appropriations, brought the case here for review. The trial court in that case decreed and held that the consumers from the ditch were the appropriators from the stream, with vested perpetual water rights in the ditch for the amount used, which accrued and continued from the date water was first utilized from the ditch on the lands of the consumers, regardless of the amount contracted for, and, being the appropriators from the stream owning the ditch appropriations, they were in no way affected by their contractual relations with the ditch owner, or by cessation in the use of water short of abandonment. In November, 1913, we reversed the case and handed down a written opinion in which we held this ruling and decision of the District Court, under the circumstances of this case, fundamentally wrong in every particular; that the original company constructing and owning the ditch, as well as its successors in interest, were in possession of and controlled the appropriations, and must be treated as a ditch owner carrying water for hire, that is, a carrier ditch as distinguished from water users who own the ditch and its appropriation, and also as distinguished from mutual ditch companies in which stock issued to the members represents the consumer's interest in the company, ditch and water; that the contract user was not an appropriator from the stream, nor the proprietor of an appropriation, nor the owner of a water right in the ditch, in the full sense of these terms; that while the ditch company was not the owner of the water, it nevertheless owned the right to divert the decreed appropriations awarded the ditch, and to charge a rental annually for its carriage, which in effect constituted it the proprietor of the appropriations; that the ditch owner owned, controlled and possessed the right to divert the ditch's decreed appropriations, and, the consumer having contracted for and used a specific volume for a certain year, had the option,

and was entitled to contract for the same amount each succeeding year, upon tender annually, without intermission, of the lawful rate; that when the contract expired, if he ceased further use from the ditch, he would then be in the same position, in the future, as one executing a new contract; that his right each year to water from the ditch is not a perpetual right, but is limited by the terms of an annual contract; that when the consumer severs this contractual relation by not renewing the contract, the contractual obligation of the carrier with the consumer is ended, except of course, that the consumer has an option to renew the contract within a definite time from year to year, and if he fails to do so the owner may contract the use and carriage to another, who would possess the right of renewal, each year, until he ceases in the use; that the contracts measure and limit the consumer's right, and in addition contain a privilege or option to purchase the use of so much water annually, if exercised within a certain time each year, without intermission; that a contract user has a right to continue by contract in the future use, as against subsequent purchasers, but when he ceases to contract and use the water, he loses the right as against intervening purchasers, and his future right to water, if any is obtainable, will begin from the time he again contracts. As to the reservation in the right of way deeds, we hold the right reserved, constituted an option which the consumer must exercise each year, and if he neglected to do so, he stood on the same plane as other contract users. As to the excess water, which term will be comprehended by those familiar with the litigation, we held the limitations imposed by the city upon the users of this water, were, in effect a lease of the amount not necessary for the city's present needs, and preserve the water privilege in the city, the same as though it had continued in the use. As to the parties who, from their pleadings and proof, had not established, under the rule announced in our opinion, that the city was under obligation to furnish them water, we held they were without rights that could be adjudicated or recognized in that suit.

March 4, 1914, remittitur was issued to the lower court; March 15, 1915, the Brown heirs filed supplemental claim; March 24, 1915, the court entered what is termed the second decree; November 15, 1916, the city filed a motion in the District Court asking that court to vacate and hold for naught the second decree, and enter a decree complying with our judgment and remittitur; March 10, 1917, the District Court overruled the motion; and March 17, 1917, an original petition was filed in this court which, among other things, alleged:

"That the said District Court of the second judicial district, and the said judge thereof, have at all times refused and neglected, and still refuse and neglect, to comply with the terms of said opinion, remittitur and mandate of this court, and to enter a decree in said cause in accordance with the views expressed in said opinion and with the terms and commands of this court embodied in said remittitur and mandate; and that no decree has ever been entered in said cause by said District Court, or any judge thereof, in accordance with the views so expressed in said opinion, and the commands of said remittitur or mandate, or otherwise or at all; and the said court and the said judge thereof intend to and will, unless compelled by this court to enter a decree in said cause in accordance with the views expressed in said opinion and the terms of said remittitur and mandate, continue to refuse and neglect to comply with the same."

And praying:

"1. That an order or writ of this honorable court issue, commanding the respondents to show cause why said judgment or said decree has not been entered according to the opinion and mandate of this court.

"2. That this court issue an order commanding the said respondents, John W. Sheafor, as presiding judge of said court, and said court, to enter said decree immediately in accordance with the opinion and mandate of this court."

The answer filed May 2, 1917, is merely a reiteration of the original theory of respondents, sustained by the Dis-

trict Court in the original decree, condemned by us as erroneous in every particular, and reiterated again by it in the second decree which shows upon its face that it was entered upon exactly the same theory as the decree reversed. April 28, 1917, a demurrer was filed to this answer upon the grounds: That it appears from the face thereof, that it does not state facts sufficient to constitute an answer, or return, or defense in favor of respondents.

Garrigues, J., after stating the facts as above:

1. The District Court entered the first decree upon the theory that each consumer was an independent appropriator from the stream, of the volume he took from the ditch and used upon his land, regardless of his contractual relations with the ditch owner. We reversed the case because the District Court proceeded upon this erroneous theory, and, in a written opinion, directed it specifically to enter a decree upon the theory that the consumers were not appropriators, and were limited, bound, controlled and governed by their contracts; that such contracts imposed no obligation upon them to continue taking the water if they did not wish to, but provided for a continuous series of annual transactions which the consumer might enter into or not, as he chose, and that to protect himself against others applying for the water, he must exercise the option each year; that if he should, at the expiration of his contract, fail to make demand for the water within the proper time, he would be in the position of one who had never received water and his future rights would date from the time when he again contracts, and that, generally speaking, all the consumers were to be supplied alike from all the appropriations. We reversed and remanded the case with directions to the District Court to enter a decree upon this theory, without further pleadings or testimony, except testimony, if offered, to establish the relative rights of the consumers under their contracts in and to the respective appropriations, if they were made to supply different classes of consumers, the general rule being, that where a ditch is awarded priorities of appropriation by original

construction, and by first and second enlargements, as this one was, that all the consumers stand upon an equal footing, and are to be supplied alike from all the appropriations. And we pointed out that unless the testimony showed that the several appropriations were made to supply distinct classes of consumers, then the water privilege of each consumer extended alike to all the appropriations decreed the ditch. This was because the claim was made that the three appropriations awarded the ditch were to supply three separate and distinct enterprises, or classes of consumers, and while all the appropriations were diverted by a common headgate, and carried for some distance through a common canal, still they were, in fact, to supply distinct and separate classes of consumers, the same as though each appropriation had a separate ditch and headgate. On account of this claim, the opinion recognized that a ditch might embrace and have within, along and through it, several ditches in one, with a common headgate, each taken out to supply distinct purposes or enterprises. In such a case the different appropriations though awarded one ditch, would be as distinct and independent as though they were carried in separate ditches, each having its own headgate. If such were the facts in the case here, then of course this would have to be recognized by the city, and by the court in the adjudication of the rights of the various consumers from the ditch; but each consumer would be entitled to be heard before his rights could be affected by such a decree. We therefore instructed the court to enter a decree upon the pleadings and testimony already taken, except testimony, if offered, to establish whether the different appropriations were made to supply different classes of consumers. If they were not, then all should stand alike upon an equal footing as to all the appropriations. Instead of complying with our directions, and following the rule we laid down, the court permitted testimony to be introduced in direct opposition to our instructions, for the purpose of showing that the consumers were appropriators from the stream, and owned the decreed ap-

propriations, and entered a second decree upon precisely the same theory as the original. It not only failed to enter a decree in accordance with our directions, but affirmatively acted in opposition to our mandate, by receiving testimony for the purpose for which we said it should not be received. This is not merely error committed in an attempt to carry out our directions, it is disobedience, constituting direct conflict between the two courts. The second decree is as much in direct conflict with the principles declared, with the rule laid down, and with the directions given in our former opinion, as the first decree. A writ of review in such a case affords no remedy, and would only make the District Court a court of last resort. Where the Appellate Court directs that a designated course be pursued, the inferior tribunal must yield obedience, otherwise our courts would be in hopeless confusion. The District Court had no power and was without jurisdiction to do other than we directed. The second decree is void, and the motion to vacate and set it aside should have been sustained.

*Galbreath v. Wallrich,* 48 Colo., 127-130, 109 Pac. 417, *Perry v. Tupper,* 71 N. C. 380; *Patten Co. v. Canal Co.,* 93 Wis. 283-290, 63 N. W. 301, 67 N. W. 432; 4 C. J., 1221; 139 Am. St. 263; *Wells v. Littlefield,* 62 Tex. 28-33-34; Elliott on App. Proc., Sec. 576.

In *Galbreath v. Wallrich, supra,* we said:

"The reason for this rule is obvious. When a particular judgment is directed by the Appellate Court, the lower court is not acting of its own motion, but in obedience to the order of its superior. What that superior says it shall do, it must do, and that alone. Public interests require that an end shall be put to litigation, and when a given case has received the consideration of this court, its merits determined, and then remanded with specific directions, the court to which such mandate is directed has no power to do anything but to obey the mandate; otherwise, litigation would never be ended, and the supreme tribunal of the state would be shorn of that authority over inferior

tribunals with which it is invested by our fundamental law. By permitting the filing of the supplemental answer and cross complaint the trial court is proceeding contrary to what we directed."

"To permit a trial court to disobey in the least respect the mandate of this tribunal, would inevitably mar the harmony of our whole judiciary system, bring its parts into conflict, and produce disorganization, disorder, incalculable mischief and confusion, by allowing judgments which we have directed to be modified, or questions injected into the case, after being remanded, the purpose of which would be to annul or modify the judgment which this court had directed should be rendered."

In *Wells v. Littlefield, supra,* the court said:
"If the ground taken by respondent's counsel, that we cannot issue the writ because the relator has his remedy by appeal, is to prevail, then this court will be without power to enforce its judgments in any cause. If the District Court disobeys our mandate and the injured party appeals, and we again decide in his favor, that court may again disobey, and by continuing this course deprive us of all power to right any wrong which may be committed below. The position of the two courts will be changed. The District Court will become the tribunal of last resort, and this court rendered subordinate to it in every respect."

The decree to be entered must of course be confined to the rights of the parties as they were at the time of the trial. It is to be expected that the rights of many of the consumers have shifted, that many changes have occurred since the trial, and will occur in the future, but in all changes in the use of water from the ditch, the rule of law we laid down in our opinion will continue as the guide, and must of necessity be followed by the ditch owner in dealing with the various consumers in the future use from the ditch.

The trial court is directed to vacate and set aside the second decree entered March 24, 1915, and to proceed in

conformity with the prior mandate of this court, and the writ issued herein will be made absolute.

Decision *en banc.*

Mr. Justice Scott and Mr. Justice Allen not participating.

Decided July 2nd, A. D. 1917.  Rehearing denied November 5, A. D. 1917.